UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EVGHENIA ROTARI and ZIN ZHI LOU,
individually and on behalf of all others similarly
situated,

                    Plaintiffs,

          vs.

MITOUSHI SUSHI, INC.,
HAI LOON "ALLEN" MAK, and
JASMINE LAW

                    Defendants.

Civil Action No. 1:19-cv-05182

**CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMAND**

Plaintiffs Evghenia Rotari and Zin Zhi Lou ("Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, The Law Office of Christopher Q. Davis, allege, upon personal knowledge and upon information and belief as to other matters, as follows:

## PRELIMINARY STATEMENT

1.      This is a collective and class action brought by Individual and Representative Plaintiffs Evghenia Rotari and Zin Zhi Lou ("Lead Plaintiffs"), on their own behalf and on behalf of the Proposed Collective Class and Class identified below (collectively, "Plaintiffs"). Plaintiffs are former tipped Servers employed at Defendants' corporately owned Mitoushi Sushi, Inc. restaurants ("Mitoushi" or the "Company") in Brooklyn, New York.

2.      Servers at Defendants' restaurants were denied lawful minimum wage and overtime compensation pursuant to unlawful "tip credit" and "tip pooling" policies, denied lawful "spread of hours" pay, denied lawful reimbursement for the cost of laundering required uniforms, subjected to Defendants' unlawful practice of tip misappropriation, subjected to

1

Defendants' unlawful failure to provide the requisite payroll notice documents, and subjected to Defendants' unlawful practice of failing to maintain accurate records in violation of federal and state wage and hour laws.

3.    The Collective Class is made of all persons who are or have been employed by Defendants as Servers at Defendants' Atlantic Avenue, Coney Island, Kings Highway, and Sheepshead Bay locations at any time within three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Class Period") who were subject to Defendants' common unlawful offset policies, including: (a) improperly taking advantage of the FLSA's "tip credit" through an unlawful "tip pooling" policy and failing to pay for the cost of laundering required uniforms, resulting in unlawful offsets against Plaintiffs' direct wages; (b) failure to pay Servers the full federal minimum wage for each week of employment; (c) unlawful retention of Servers' earned tips; (d) failure to provide spread of hours pay; (e) failure to pay Servers all earned overtime wages due; (f) and failure to furnish the requisite payroll notice documents.

4.    The Class is made up of all persons who are or have been employed by Defendants as Servers at Defendants' Atlantic Avenue, Coney Island, Kings Highway, and Sheepshead Bay locations during the period of six years prior to the filing date of this Complaint ("the Class Period") and who were subject to Defendants' common unlawful policies of: (a) enforcing offsets against Plaintiffs' direct wages, including improperly taking advantage of the NYLL's "tip credit" and failing to pay for the cost of laundering required uniforms, resulting in Defendants' failure to pay Servers the full State minimum wage or their regular rate of pay for each week of employment, unlawful retention of Servers' earned tips, and failure to pay Servers all earned overtime wages due;  (b) failing to reimburse Servers for the cost of laundering required uniforms at statutorily-

required rates; (c) failing to pay "spread of hours" pay; and (d) failing to provide Servers, at the time of hiring, and/or with each weekly payment of wages, with notices of the rate of pay and accurately written pay statements, failing to provide updated pay notices when employees' rate of pay changed, and failing to maintain and update required records regarding wages and tips, as required by the NYLL, the NYCRR, New York's Wage Theft Prevention Act, and relevant regulations.

5.      Plaintiffs seek relief for the Class pursuant to the applicable provisions of the New York Labor Law ("NYLL") and Collective Class under the Fair Labor Standards Act ("FLSA"), to remedy the Defendants failure to pay all wages and tips due and for notice and recordkeeping failures, in addition to injunctive relief.

## PARTIES

*Plaintiffs*

6.      Individual and representative Plaintiff Evghenia Rotari lives in Brooklyn, New York.  She was previously employed by Defendants at their restaurant located at 1221 Quentin Road, Brooklyn NY, 11229 (the "Kings Highway" location) from January 2012 to August 2014, and at their restaurant located at 1714 Sheepshead Bay Road, Brooklyn NY, 11235 (the "Sheepshead Bay" location) from January 2012 until May 2016.

7.      Individual and representative Plaintiff Zin Zhi Lou resides in Brooklyn.  He was previously employed by Defendants as a Server at their Sheepshead Bay location, from 2010 until January 2019.

8.      Throughout the relevant time period, Plaintiffs performed tipped services as wait staff for Defendants at their restaurants located in Brooklyn.

*Corporate Defendants*

9.      Defendant Mitoushi Sushi, Inc., is a domestic business corporation organized under the laws of the State of New York with a principle address at 1714 Sheepshead Bay Road, Brooklyn, NY 11235.

10.      In addition to their Kings Highway and Sheepshead Bay locations, Defendants operate restaurants at 2478 Coney Island Ave., Brooklyn, NY 11223 (the "Coney Island" location) and 177 Atlantic Ave., Brooklyn, NY 11201 (the "Atlantic Avenue" location).

11.      At all relevant times, the Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

12.      At all relevant times, Defendants were covered employers within the meaning of the FLSA and the NYLL, and, at all relevant times, employed Plaintiffs and similarly situated employees.

13.      Defendants' restaurants in the Brooklyn are commonly operated and managed pursuant to common policies and practices, including common employee compensation and FLSA classification policies applicable to all locations.

14.      Defendants jointly employed Plaintiffs and similarly situated employees at all times relevant. Each Defendant had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

15.      Defendants' operations are interrelated and unified.  During all relevant times, Defendants' corporately owned Mitoushi restaurants shared common management and were centrally controlled and/or owned by Defendants.

16.      The chain of corporately owned restaurants in the United States under the trade name "Mitoushi" are operated by Defendants as a single common enterprise. Employees are

freely interchangeable, the various business operations are marketed as one entity, and all employees are paid by the same payroll methods.

***Owner/Operator Defendants***

17.    The Individual Defendants are owners of the Corporate Defendant.

18.    Jasmine Law (a) had the power to hire and fire employees, (b) supervised and controlled employee work schedules or conditions of employment, (c) determined the rate and method of payment, and (d) maintained employee records at Mitoushi Sushi, Inc.

19.    Hai Loon Mak (a) had the power to hire and fire employees, (b) supervised and controlled employee work schedules or conditions of employment, (c) determined the rate and method of payment, and (d) maintained employee records at Mitoushi Sushi, Inc.

20.    Jasmine Law acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Mitoushi Sushi, Inc.

21.    Hai Look Mak acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Mitoushi, Inc.

22.    At all relevant times, the Defendants maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

23.    The Defendants apply the same employment policies, practices, and procedures to all current and formers servers at the Mitoushi restaurants, including policies, practices, and procedures with respect to the payment of minimum wage, overtime compensation, wage

statements, wage notices, retention of tips, and failing to reimburse servers for the cost of maintaining their uniforms.

24.    At all relevant times, the Defendants have had the power to declare bankruptcy on behalf of the Mitoushi restaurants.

25.    At all relevant times, the Defendants have had the power to enter into contracts on behalf of the Mitoushi restaurants.

26.    Upon information and belief, at all relevant times, the Defendants' annual gross volume of sales made or business done was not less than $500,000.

27.    At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

## JURISDICTION AND VENUE

28.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

29.    In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 *et seq.*

30.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

31.    Venue is proper in the United States District Court, Eastern District of New York pursuant to 28 U.S.C. § 1391, because the wage violations which give rise to Plaintiffs' claims occurred in this District.

32.    Defendants are subject to personal jurisdiction in New York.

## COLLECTIVE ACTION ALLEGATIONS

33.    Plaintiffs bring FLSA claims on behalf of themselves and other employees

similarly situated as authorized under 29 U.S.C. § 216(b).  The employees similarly situated are:

**Collective Class:**    All employees who have been employed by Defendants as tipped Servers at any of Defendants' Brooklyn Mitoushi locations within three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Class Period") and who were subject to Defendants' common unlawful wage-offset and payroll notice policies, including improperly taking advantage of a "tip credit" through an unlawful "tip pooling" policy and failing to pay for the cost of laundering required uniforms, resulting in unlawful offsets against Plaintiffs' sub-minimum direct wages, and resulting in Defendants' failure to pay Servers the federal minimum wage for each week of employment, unlawful retention of Servers' earned tips, and/or failure to pay Servers all earned overtime wages due.

34.    Defendants employed Plaintiffs during the Collective Class Period.

35.    On information and belief, Defendants have employed more than forty (40) other Servers during the collective class period through its Brooklyn-based corporate owned restaurants.

36.    Plaintiff Servers performed duties pursuant to common job descriptions and uniform training.

37.    Defendants failed to provide written notice of Plaintiffs' rate of pay at the time of hiring.

38.    Defendants also failed to provide updated written notices when they changed Plaintiffs' rate of pay.

39.    Defendants failed to provide Plaintiffs with accurate weekly pay statements.

40.    On all days of the week, employees were required to arrive at work an hour before their shift to set up tables, prepare food, clean bathrooms, and sweep the sidewalk.

41.     On all days of the week, night shift employees were required to stay at the restaurant until the last customer left, typically well after their shift was scheduled to end at 11 P.M.

42.     On Monday through Thursday, the restaurant had two shifts: a day shift from 11 A.M. to 5 P.M. and a night shift from 5 P.M. to 11 P.M. Plaintiffs regularly worked double shifts, such that they were scheduled and worked for more than twelve (12) hours per day.

43.     On Friday and Saturday, the restaurant had two shifts: a day shift from 11 A.M. to 5 P.M. and a night shift from 5 P.M. to 12 A.M. Plaintiffs regularly worked double shifts, such that they were scheduled and worked for more than thirteen (13) hours per day.

44.     On Sunday, the restaurant had two shifts: a day shift from 12 A.M. to 5 P.M. and a night shift from 5 P.M. to 11 P.M. Plaintiffs regularly worked double shifts, such that they were scheduled and worked for more than twelve (12) hours per day.

45.     Plaintiffs and the members of the class were not able to take any rest or meal breaks, in spite of the fact that they frequently worked for twelve (12) or more hours at a time.

46.     Plaintiffs worked an average of fifty to sixty hours per week.

47.     Servers were typically scheduled to work five (5) days per week: four 12-hour shifts and one six-hour shift per week.

48.     During their first year of employment, Lead Plaintiffs were paid a wage of $15.00 per 6-hour shift, for an average of $2.50 per hour.

49.     During their second year of employment, Lead Plaintiffs received a raise to $30.00 per 6-hour shift, for an average of $5 per hour. Lead Plaintiffs were told not to inform the rest of the staff that they had received an increase in pay.

50.     During their third year of employment, Lead Plaintiffs received a raise to $40.00 per 6-hour shift, for an average of $6.67 per hour. Lead Plaintiffs were told not to inform the rest of the staff that they had received an increase in pay.

51.     During their fourth year of employment, Lead Plaintiffs received a raise to $50.00 per 6-hour shift, for an average of $8.33 per hour. Lead Plaintiffs were told not to inform the rest of the staff that they had received an increase in pay.

52.     Upon information and belief, all Servers started their employment with Defendants earning $15.00 for every 6-hour shift.

53.     In order to deny Plaintiffs lawful overtime payment for hours worked in excess of forty (40) hours per week, Defendants failed to record Plaintiffs' hours worked, instead marking whether they were to be compensated for a half or a full shift.

54.     Beginning in 2018, Defendants implemented a clock-in system.

55.     In order to deny Plaintiffs lawful overtime payment for hours worked in excess of 40 hours per week, Defendants instructed Plaintiffs when to clock in and out so that their total hours worked would never exceed 40 hours per week. On occasion, Plaintiffs were instructed not to clock in for entire shifts.

56.     If Plaintiffs did clock in for more than 40 hours per week, Defendants falsified records so that the total hours worked would never exceed 40 hours per week.

57.     Servers were required to purchase a uniform consisting of a black shirt, black pants, and shoes.

58.     Servers were expected to wear the uniform every shift, and they were required to keep their uniforms clean.

59.    Defendants did not pay for the cost of laundering uniforms, and Plaintiffs were required to pay the cost of laundering uniforms themselves.

60.    As a matter of common policy, and pursuant to job descriptions and training guidelines applicable to the Collective Class and Class Members, Plaintiffs spend a substantial amount of time performing non-tipped work including, but not limited to: cleaning the sidewalk, cleaning the bathroom at the beginning and ending of every shift, preparing food, shoveling snow, lifting heavy supplies, setting up tables at the start of the morning shift, and restocking the salad bar and sauce at the end of the night shift.

61.    The Lead Plaintiffs arrived at work for opening shifts one hour before the store opened and frequently continued performing non-tipped "opening" duties even after the store opened.

62.    Servers assigned to "close" performed non-tipped work including cleaning and food preparation duties after the last customer in the restaurant left.

63.    Non-tipped producing "closing" duties lasted approximately one hour every day.

64.    The Lead Plaintiffs each worked "closing" shifts and performed, on average, one hour of non-tipped closing-related duties.

65.    Aside from opening and closing duties, Servers were expected to perform many non-tipped duties throughout their shift.

66.    The Lead Plaintiffs observed the other Servers performing approximately the same percentage of non-tipped duties in their stores.

67.    Plaintiffs at the Sheepshead Bay location were subjected to an 18% tip deduction. Defendants deducted 5% for management, 5% for employees working in the back kitchen, and 2.5-3% for dishwashers.

68.     Plaintiffs at the Kings Highway location were subjected to a 15% tip deduction. Defendants deducted 3% for management, 5% for the back kitchen, and 3% for the dishwashers.

69.     Dishwashers and back kitchen staff work entirely in the back kitchen out of view of customers, and had no duties on the restaurant floor.

70.     The managers, kitchen staff, and dishwashers were not tipped employees as the term has been interpreted under the FLSA and the NYLL, and could not share in tips pursuant to a mandatory tip sharing policy.

71.     If a customer left without paying, or if there was a cash register shortage, Plaintiffs were compelled to pay the difference out of their tips.

72.     At all times relevant, Defendants paid Plaintiffs and all similarly situated Class and Collective Action Members a reduced minimum wage rate as tipped employees despite not satisfying requirements under the FLSA, the NYLL, the Wage Theft Protection Act, and relevant sections of the Code of Federal Regulation ("CFR") and the New York City Code of Rules and Regulations ("NYCRR") to do so.

73.     Defendants were unable to take a tip credit under the FLSA because, according to common policies applicable to all Servers, they (a) failed to provide Servers with a legally sufficient "tip credit" notice at the time of hiring, including failing to communicate, accurately and completely, the amounts of the cash wage paid and the tip credit taken; that the tip credit portion may not exceed the value of the tips actually received; that all tips received by the employee must be retained by the employee except for amounts contributed toward a valid tip-pooling arrangement; and that the tip credit will not apply to any employee who has not been informed of these requirements; (b) failed to provide notice of mandatory participation in tip pooling or tip splitting, including the participating employees and splitting percentages; (c) failed

to timely update any "tip credit" notice with cash wage increases due to promotion, merit or COLA increases, and/or statutorily imposed increases in the minimum wage; (d) required Plaintiffs to spend at least two hours of their full shifts performing non tip-producing work; (e) unlawfully included non-service managers, kitchen staff, and dishwashers in employer-mandated tip pooling who do not provide direct customer service to dining room patrons, who are not recognized by dining room customers when they leave tips, and who would not otherwise receive tips if they were not included in the tip pool; (f) requiring Servers to regularly contribute an unreasonable and disproportionate percentage of tips to mandatory tip pool by requiring Servers to contribute 15-18% of tips per shift; (g) failing to pay the full minimum wage for non-tip producing duties performed during distinct periods of time, such as mandatory cleaning and preparation duties performed before opening or after closing;  (h) and imposing the cost of doing business upon Servers, in the form of charging them for the costs of laundering mandatory uniforms since Defendant have a policy requiring the wearing of clean uniforms,  and since doing so requires offset against sub-minimum direct wages.

74.     During these periods, Defendants unlawfully compensated Plaintiffs at the tipped minimum wage rate rather than the full hourly minimum wage rate.

75.     Defendants unlawfully paid Plaintiffs using the tip credit minimum wage rate, rather than the full minimum wage rate by offsetting tips against their sub-minimum hourly wages.

76.     As a result, Defendants miscalculated Plaintiffs' regular rate of pay, and did not pay Plaintiffs the proper wages, minimum wages, or overtime wages for all of the time they performed compensable work each workweek.

77.     Further, Defendants unlawfully failed to reimburse Plaintiffs for misappropriated tips having unlawfully availed themselves of the tip credit.

78.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they have had substantially similar job requirements, were subject to common employment-related compensation and operational policies, and were all subjected to Defendants' illegal policies of failing to pay the proper minimum wage for all hours worked, failing to pay all earned tips, and/or failing to pay correct overtime premiums for work performed over forty (40) hours each week, having subjected subminimum direct wages to an improper offset by unlawfully asserting the ability to take a "tip credit."

79.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b). The FLSA Collective Class Members are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Class Members via first class mail to the last address known to Defendants.

80.     Consistent with Defendants' policy, pattern and/or practice, Plaintiffs and the Collective Class Members were not paid minimum wages for all hours worked, all earned tips, and premium overtime compensation for all hours worked beyond forty (40) per workweek.

81.     Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective Class.

82.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the Collective Class, and as such, notice should be sent to the Collective Class. There are numerous similarly situated current and former employees of Defendants who were

subject to the aforementioned policy in violation of the FLSA and who would benefit from the

issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the

present lawsuit. Those similarly situated employees are known to the Defendants and are readily

identifiable through Defendants' records.

## CLASS ALLEGATIONS

83.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following defined class:

**Proposed Classes:**   **Tipped Employee Offset Class**: All employees who have been employed by Defendants as tipped Servers at any of Defendants' Brooklyn restaurants within six years prior to this action's filing date through the date of the final disposition of this action (the "Class Period") and who were subject to Defendants' common unlawful offset policies, including improperly taking advantage of the NYLL's "tip credit," resulting in Defendants' failure to pay for the cost of laundering Plaintiffs' required uniforms; unlawful reduction of Plaintiffs' direct wages and tips, resulting in Defendants' failure to pay Plaintiffs the full NY State minimum wage for each week of employment; unlawful retention of Servers' earned tips; and, having miscalculated the regular rate of pay, failing to pay Plaintiffs all earned overtime wages due.

**Spread of Hours Class:**  All employees who have been employed by Defendants as tipped Servers at any of Defendants' Brooklyn restaurant locations within six years prior to this action's filing date through the date of the final disposition of this action (the "Class Period") and who were subject to Defendants' common unlawful policy of improperly denying spread of hours compensation when lawfully earned, and failing to include spread of hours compensation in the regular rate of pay when calculating and paying overtime.

**Wage Statements**: All employees who have been employed by Defendants as tipped Servers at any of Defendants' Brooklyn restaurant locations within six years prior to this action's filing date through the date of the final disposition of this action (the "Class Period") and who were subject to Defendants' common unlawful policy of failing to provide adequate introductory, updated and/or biweekly wage statements, and failing to maintain lawful recordkeeping practices for wage and tip records, pursuant

to the NYLL Section 195, the Wage Theft Protection Act, NYLL 198 *et al*, and/or 12 NYCRR Subparts 137-2 and 146-1.

**Uniform Laundering Class**: All employees who have been employed by Defendants as tipped Servers at any of Defendants' Brooklyn locations within six years prior to this action's filing date through the date of the final disposition of this action (the "Class Period") and who were subject to Defendants' common unlawful policy of failing to provide uniform maintenance pay pursuant to 12 NYCRR Sections 137-1.8 and 146-1.7, and also failing to include this premium in the regular rate of pay calculation for the purposes of paying overtime premiums for hours worked over 40 in a workweek.

84.    Plaintiffs incorporate by reference the facts alleged in the above.

85.    A class action is appropriate in this circumstance because Plaintiffs and the Class Action Members are similarly situated with respect to the Tipped Employee Offset Class, in that they have substantially similar job requirements, were subject to common employment-related compensation and operational policies, and were all subject to Defendants' illegal policy of subjecting Plaintiffs' subminimum direct wages to unlawful offset, failing to pay the proper minimum wage for all hours worked, failing to pay all earned tips, and/or failing to pay lawful overtime premiums for work performed over forty (40) hours each week.

86.    Plaintiffs Rotari and Lou and other members of the putative class worked double shifts, approximately 12-14 hours, without any spread of hours compensation and without being paid the appropriate overtime rate for hours worked in excess of 40.

87.    Plaintiffs and the Class Action Members are similarly situated with respect to the Spread of Hours Class because they have had substantially similar job requirements, were subject to common employment-related compensation and operational policies, and were all subject to Defendants' illegal policy of failing to pay spread of hours compensation when earned

for an additional hour of pay at the minimum wage for each day Plaintiffs had a spread of hours in excess of ten hours per day, in violation of the New York Labor Law.

88.    Plaintiffs and the Class Action Members are similarly situated with respect to the Uniform Laundering Maintenance Class because they have had substantially similar job requirements, were subject to common employment-related compensation and operational policies, and were all subject to Defendants' illegal policy of failing to pay uniform laundering maintenance pay under the NYCRR and failing to properly calculate the regular rate of pay in paying overtime premiums for hours worked in excess of 40 hours in a workweek.

89.    Plaintiffs and the Class Action Members are similar situated with respect to the Wage Statement Class because they had substantially similar job requirements, were subject to common employment-related compensation and operational policies, and were subject to Defendants' common unlawful policy of failing to provide adequate introductory, updated and/or biweekly wage statements, or maintain lawful recordkeeping practices, pursuant to NYLL Section 195 *et al*, the Wage Theft Protection Act, NYLL 198 *et al*, and/or 12 NYCRR Subparts 137-2 and 146-2.

90.    Defendants are unable to take a tip credit under the NYLL and relevant regulations because, according to common policies applicable to all Servers, they (a) failed to provide Servers with a writing at the time of hiring in the primary language of the employee which provided lawful notice of Defendants' intention to take a "tip credit" and other wage and tip-related notices which satisfied the requirements of 12 NYCRR Subparts 146-1 and 146-2 and NYLL Section 195; (b) failed to provide notice of Defendants' mandatory tip pooling policy pursuant to NYLL Section 195 and 12 NYCRR Section Subpart 146-2, including information on participating employees and splitting percentages; (c) failed to timely update any "tip credit"

notices pursuant to 12 NYCRR Section 146-2.2 and NYLL Section 195 when Servers received cash wage increases due to promotion, merit or other reason, and/or because of statutorily imposed increases in the minimum wage; (d) required Plaintiffs to spend over twenty percent (20%) or two hours of their working day, whichever is less, performing non tip-producing work in violation of 12 NYCRR Section 146-2.9; (e) unlawfully including non-service managers, kitchen staff, and dishwashers in employer-mandated tip pooling who do not provide direct customer service to dining room patrons, who are not recognized by dining room customers when they leave tips, and who would not otherwise receive tips if they were not included in the tip pool in violation of 12 NYCRR Section 146-2.14; (f) requiring Servers to contribute a greater percentage of their tips than is customary and reasonable to indirectly tipped employees (busboys and non-service baristas) in violation of 12 NYCRR Section 146-2.14;  (g) failing to pay the full minimum wage for non-tip producing duties performed during distinct periods of time, such as mandatory cleaning and preparation duties performed before opening or after closing; (h) failing to establish, maintain, and preserve wage and tip statements pursuant to NYLL Section 195, *et al*, the Wage Theft Protection Act, and/or 12 NYCRR Subparts 137-2 and 146-2; and  (i) failing to provide weekly pay statements and daily tip logs for Servers pursuant to 12 NYCRR Subpart 146-2and NYLL Section 195.

91.     The claims of Plaintiffs are typical of the claims of the Class Members they seek to represent. Plaintiffs and all of the Class Members work, or have worked, for Defendants as Servers at the Mitoushi restaurants in Brooklyn. Plaintiffs and the Class Members enjoy the same statutory rights under the NYLL, including to be paid for all hours worked, to be paid overtime wages, and to be reimbursed for the cost of maintaining their uniforms. Plaintiffs and the Class Members have all sustained similar types of damages as a result of Defendants' failure to comply

with the NYLL.  Plaintiffs and the Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

92.     Numerosity:    The Proposed Classes are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that during the relevant time period, Defendants employed in excess of 40 people who satisfy the definition of the Proposed Classes.

93.     Typicality:    The Plaintiffs' claims are typical of the members of the Proposed Classes. Plaintiff is informed and believes that, like other Servers, the putative plaintiffs were subject to the aforementioned unlawful policies during the Class Period. Plaintiffs had the same duties and responsibilities as other Class Members.

94.     Superiority:    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

95.     Adequacy:     Plaintiffs will fairly and adequately protect the interests of the Proposed Classes, and have retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

96.     Commonality:  Common questions of law and fact exist to all members of the Proposed Classes and predominate over any questions solely affecting individual members of the Proposed Classes, including but not limited to:

a.      Whether Defendants subjected Servers' wages to unlawful offset by instituting an illegal tip credit policy under the NYLL;

b.      Whether Defendants failed to compensate Plaintiffs for the cost of laundering required uniforms under the NYLL;

c.       Whether Defendants failed to pay lawful minimum wages to Plaintiffs and the Proposed Class under the NYLL;

d.       Whether Defendants failed to compensate pay spread of hours compensation to Plaintiffs as required by the NYLL;

e.       Whether Defendants unlawfully failed to pay appropriate overtime compensation to members of the Proposed Class in violation of NYLL for hours worked over 40 during a workweek;

f.       Whether Defendants employed Plaintiffs and the Proposed Classes within the meaning of New York law;

g.       Whether Defendants failed to maintain accurate timekeeping records as required by the NYLL, the Wage Theft Protection Act, and the NYCRR;

h.       The proper measure of damages sustained by the Proposed Classes; and

i.       Whether Defendants' actions were "willful."

97.      The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

98.      Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed Classes predominate over any questions affecting only individual members of the Proposed Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants'

common and uniform policies and practices denied the Proposed Classes the wages to which

they are entitled. The damages suffered by the individual members of the Proposed Classes are

small compared to the expense and burden of individual prosecution of this litigation. In

addition, class certification is superior because it will obviate the need for unduly duplicative

litigation that might result in inconsistent judgments about Defendants' practices.

99.     Plaintiffs intend to send notice to all members of the Proposed Classes to the

extent required by Rule 23. The names and addresses of the Proposed Classes are available from

Defendants.

<u>**AS FOR A FIRST CAUSE OF ACTION**</u>
(Unpaid Minimum Wages Under the Fair Labor Standards Act)

100.     Plaintiffs allege and incorporate by reference the allegations in the preceding

paragraphs.

101.     Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. §

216(b).

102.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and

reallege each and every allegation of the preceding paragraphs hereof with the same force and

effect as though fully set forth herein.

103.     Defendants failed to pay Plaintiffs and the Collective Action Members the

minimum wages to which they are entitled under the FLSA.

104.     Defendants failed to pay the full minimum wage by relying on an unlawful tip

credit and by failing to reimburse Servers for the cost of laundering required uniforms, practices

that resulted in deductions from their minimum cash wage by separate transaction.

105.     Defendants have engaged in a widespread pattern, policy, and practice of

violating the FLSA, as detailed in this Class and Collective Action Complaint.

106.    Defendants were required to pay directly to Plaintiffs and the Collective Action Members the full federal minimum wage rate for all hours worked.

107.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.,* because Defendants failed to inform Plaintiffs and the Collective Action Members of the provisions of subsection 203(m) of the FLSA.

108.    Defendants were further not eligible to avail themselves of the federal tipped minimum wage under the FLSA, 29 U.S.C. §§ 201 *et seq.,* because Defendants required Plaintiffs and the Collective Action Members to perform a substantial amount of non-tipped work two hours per full shift.

109.    Defendants were further not eligible to avail themselves of the federal tipped minimum wage under the FLSA for the reasons set forth in paragraph 73, *infra*.

110.    During these periods, Defendants compensated Plaintiffs and the Collective Action Members at the tipped minimum wage rate rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq*.

111.    As a result of Defendants' violations of the FLSA, Plaintiffs and the Collective Action Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

112.    Defendants' unlawful conduct, as described in this Class and Collective Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Class and Collective Action Complaint were unlawful.

113.    Because Defendants' violations of the FLSA have been willful, a three (3) year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

## AS FOR A SECOND CAUSE OF ACTION
### (New York Labor Law Article 6 and 12 NYCRR 142-2.2: Unpaid Overtime Wages)

114.    Plaintiffs repeat and reallege each and every paragraph above as though fully set forth herein.

115.    At all relevant times, Plaintiffs were employees and Defendants have been employers within the meaning of the NYLL.

116.    Defendants knowingly and intentionally failed to pay Plaintiffs overtime at a rate of one and one-half times his regular rate for each hour worked in excess of forty (40) hours per week in violation of New York Labor Law Article 19, §§ 650 *et seq.* and the supporting regulation of the New York State Department of Labor, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

117.    Defendants' failure to pay Plaintiffs' overtime premiums was willful within the meaning of the N.Y. Lab. Law § 663.

118.    Due to Defendants' violations of the New York Labor Law, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS FOR A THIRD CAUSE OF ACTION
### (Unpaid Minimum Wage Compensation Under the New York Labor Law and the New York Code of Rules and Regulations)

119.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

120.    At all relevant times, Plaintiffs and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651 and the supporting New York State Department of Labor regulations.

121.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

122.    Defendants engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in the Class and Collective Action Complaint.

123.    The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor regulations apply to Defendants, and protect Plaintiffs and the Class Members.

124.    Defendants were required to pay Plaintiffs and Class Members the full minimum wage at a rate of (a) $7.15 per hour for all hours worked from January 1, 2007 through July 23, 2009; (b) $7.25 per hour for all hours worked from July 24, 2009 through December 30, 2013; (c) $8.00 per hour for all hours worked from December 31, 2013 through December 30, 2014; (d) $8.75 per hour for all hours worked from December 31, 2014 through December 30, 2015; (e) $9.00 per hour for all hours from December 31, 2015 through December 30, 2016; (f) $11.00 per hour for all hours from December 31, 2016 through December 30, 2017; (g) $13.00 per hour for all hours from December 31, 2017 through December 30, 2018; (h) $15.00 per hour for all hours on and after December 31, 2018; and (f) under the NYLL §§ 650 et seq. and the supporting New York State Department of Labor regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

125.     Defendants failed to pay the full minimum wage by relying on an unlawful tip credit and by failing to reimburse Servers for the cost of laundering required uniforms, a practice that resulted in deductions from their minimum wage by separate transaction.

126.     Defendants cannot claim the tip credit because Defendants failed to furnish a statement listing hours worked with rates paid, gross wages, and tip allowances claimed as part of their minimum hourly wage rate with every payment of wages to Plaintiffs and the Class Members in violation of the NYLL Section 195, and the supporting New York State Department of Labor regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

127.     Defendants cannot claim the tip credit because Defendants failed to provide notice to Plaintiffs and the Class Members at the time of hire which included their rate of pay, including overtime rate of pay, how the employee was paid, the regular payday, address and phone number of the employer's main office or principal location and allowances taken as part of the minimum wage (i.e., tip credit).

128.     Defendants cannot claim the tip credit because Defendants required Plaintiffs and the Class Members to perform a substantial amount of non-tipped work in excess of two hours per full shift. During these periods, Defendants compensated Plaintiffs and the Class Members at the tipped minimum wage rate rather than the full hourly minimum wage rate as required by 12 NY.C.R.R. Part 237 and Part 146.

129.     Defendants were further not eligible to avail themselves of the federal tipped minimum wage under the NYLL for the reasons set forth in paragraph 77, *infra.*

130.     Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs and the Class Members, Defendants have willfully violated the NYLL, Article 19, §§

650 et seq., and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

131.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## AS FOR A FOURTH CAUSE OF ACTION
(Unpaid Overtime Wages Under the Fair Labor Standards Act)

132.    Defendants failed to pay Plaintiffs and the Class Members one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) per workweek.

133.    Defendants improperly availed themselves of the tip credit and miscalculated the regular rate of pay and overtime rate of pay.

134.    Defendants also failed to include laundering maintenance pay in the regular rate of pay for the sake of calculating overtime rates of pay.

135.    Through their knowing or intentional failure to pay Plaintiffs and the Class Members overtime wages for hours worked in excess of forty (40) per week, Defendants willfully violated the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations.

136.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS FOR A FIFTH CAUSE OF ACTION

(Recordkeeping violations, including failing to provide adequate introductory, updated and/or biweekly wage and tip statements pursuant to NYLL Section 195 *et al*, the Wage Theft Protection Act, NYLL 198 *et al,* and/or 12 NYCRR Subparts 137-2 and 146-2.)

137.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

138.    Defendants willfully failed to supply Plaintiffs and the Class Members with wage statements in the language identified by Plaintiffs and the Class Members as their primary language.

139.    Defendants willfully failed to supply Plaintiffs and the Class Members with written and accurately stated notice of the following at the start of their employment, and in the event any of the data in the notice changes one week in advance of any change: rates of pay, including overtime rate of pay, how the employee is paid, the official name of the employer and another other names used for business (DBA's); address and phone number of the employer's main office, and allowances taken as part of the minimum wage including tip credits and deductions.

140.    Defendants failed to maintain wage and hour records for six years and on an ongoing basis, including accurate records of hours worked by employees and wages, including, for each week an employee works, records of hours worked (regular and overtime), rates of pay (regular and overtime), how the employee is paid, employees gross and net wages, itemized deductions, and itemized allowances and credits claims by the employer, including tip credits.

141.    Defendants failed to provide payroll statements each pay period with  hours worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if any, deductions,

net wages, the employee's name, employer's name, address and phone number, and dates

covered by the payment.

142.     Defendants also failed to maintain the following records a required by the

NYCRR: (a) a daily log of tips collected by each employee on each shift; (b) a list of occupations

deemed eligible to receive tips through the top sharing or tip pool system; (c) the shares of tips

that each occupation receives; and (d) the amount in tips that each employee receives.

143.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are

entitled to recover from Defendants statutory penalties, as provided for by NYLL, Article 6, §§

190 *et seq*., liquidated damages as provided for by the NYLL, reasonable attorney' fees, costs,

pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### AS FOR A SIXTH CAUSE OF ACTION
(Failure to Pay Uniform Maintenance Pay in violation of the New York Labor Law and
the New York City Code of Rules and Regulations)

144.     Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and

incorporate by reference the foregoing allegations as if set forth fully and again herein.

145.     Defendants required Plaintiffs and the Class Members to wear a certain uniform

(black shirt, pants and shoes) when they worked for Defendants, but did not reimburse Plaintiffs

or the Class Members for the cleaning of these uniforms as required by New York law.

146.     Accordingly, Defendants are required to compensate Plaintiffs and the Class

Members uniform maintenance pay in statutorily proscribed amounts.

147.     The Defendants' NYLL violations have caused Plaintiffs and Class Members

irreparable harm for which there is no adequate remedy at law.

148.     Due to Defendants' NYLL violations, Plaintiffs and the Class Members are

entitled to recover as damages from Defendants the statutorily proscribed uniform maintenance

pay amounts for which Plaintiffs and the Class Members incurred, plus liquidated damages, damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements.

### AS FOR A SEVENTH CAUSE OF ACTION
Tip Misappropriation under State Law

149.    Section 196–d states that "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196–d.

150.    It further states that §196–d shall not be construed as affecting "the sharing of tips by a waiter with a busboy or similar employee," i.e. another food service worker who provides personal customer service as a principal or regular part of their duties.

151.    Pursuant to Defendants' mandatory tip splitting policy, Servers in Defendants' stores are forced to split tips with non-service managers, kitchen staff, and dishwashers who do not provide personal customer service to dining room patrons.

152.    Defendants are liable for non-payment of tips and must reimburse Plaintiffs appropriated tips.

153.    Plaintiffs and the Class Members incurred, plus liquidated damages, damages for unreasonably delayed payment of tips, interest, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*. and § 196-d.

### AS FOR AN EIGHTH CAUSE OF ACTION
(Unlawful Deductions from Wages in Violation of NYLL § 193, 198-b (2), and § NYCCRR 137-2.5)

154.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

155.    At all relevant times, Plaintiffs were employees and Defendants were employers within the meaning of the New York Labor Law.

156.    Defendants exercised control over the nature and structure of the employment relationship and economic control over the relationship such that were "employers" under the FLSA and NYLL and therefore individually subject to liability.

157.    Section 193 and 198-b of the New York Labor Law expressly prohibits an employer from making unauthorized deductions from employees' wages.

158.    Section 193 prohibits deductions from employees' wages unless the deductions are (a) expressly authorized by and for the benefit of the employee and (b) limited to the enumerated categories of permissible deductions.

159.    Defendants made deductions from the wages of the Plaintiffs for purposes which are not permissible under the statute namely, unlawfully applying a tip credit against wages and reducing wages by requiring Plaintiffs to pay for the costs of laundering mandatory uniforms (separate transaction deductions).

160.    The deductions made by Defendants were not made with the informed authorization of the employee and were not for Plaintiffs' benefit.

161.    By Defendants' practice of making unlawful deductions from Plaintiffs' earned wages, Plaintiffs were damaged in an amount to be proven at trial.

162.    Section 198-b(2) provides, "Whenever any employee who is engaged to perform labor shall be promised an agreed rate of wages for his or her services, be such promise in writing or oral, or shall be entitled to be paid or provided prevailing wages or supplements pursuant to article eight or nine of this chapter, it shall be unlawful for any person, either for that person or any other person, to request, demand, or receive, either before or after such employee

is engaged, a return, donation or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment."

163.    Defendants have separately violated Section 198-b (2) by requiring Plaintiffs to return earned wages to Defendants.

164.    Due to Defendants' violations of the New York Labor Law, Plaintiffs are entitled to recover from Defendants all wages deducted or charged, and all payments required by separate transaction plus reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS FOR AN NINTH CAUSE OF ACTION
### Failure to pay Spread of Hours Pay Under New York Law

165.    Under New York law, employers must pay "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required [by New York's minimum wage law], for any day in which (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur." N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.4.

166.    "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday."

167.    In the hospitality industry, "spread of hours" pay must be paid to employees for any days in which their spread is over 10 hours, regardless of how much the employee makes.

168.    This includes "split shifts" where the spread of hours exceeds 10 hours.

169.    Plaintiffs Evgehnia Rotari and Xin Zhi Lou regularly worked shifts which exceeded 10 hours, including split shifts, as did members of the putative Class.

170.    Plaintiffs and the Class Members incurred, plus liquidated damages, damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*. and § 196-d.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all members of the Proposed Classes, pray for relief as follows:

A.    That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.    That Defendants are found to have violated the provisions of the New York Labor Law, the New York Wage Theft Prevention Act, the New York Code of Rules and Regulations, and the Fair Labor Standards Act as to Plaintiffs and the Class;

C.    That Defendants' violations as described above are found to be willful;

D.    An award to Plaintiffs and the Class for the amount of unpaid wages owed, unpaid tips, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

E.    That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and the NYLL;

F.    An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29 U.S.C. § 216 and/or other applicable law; and

G.    For such other and further relief, in law or equity, as this Court may deem appropriate and just, including incentive awards for the Lead Plaintiffs.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues so triable.

**DATED**:  September 11, 2019

**The Law Office of Christopher Q. Davis, PLLC**

Christopher Q. Davis (CD-7282)
Mariyam Hussain (MH-9189)
80 Broad Street
Suite 703
New York, New York 10004
Telephone: (646) 430-7930

Attorneys for Plaintiffs and the Proposed Classes