UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
EVGHENIA ROTARI and ZIN ZHI LOU :
*On behalf of themselves and others similarly* :
*situated,* :
: 
                Plaintiffs, : **MEMORANDUM**
: **DECISION AND ORDER**
     -against- :
: 19-cv-5182 (BMC)
: 
MITOUSHI SUSHI, INC. d/b/a MITOUSHI :
ASIAN FUSION, ATLANTIC MITOUSHI :
SUSHI INC. d/b/a MITOUSHI, KINDACHI :
INC. d/b/a MITOUSHI JAPANESE FUSION, :
FUCIAANA, INC. d/b/a MITOUSHI ASIAN :
FUSION, HAI LOON "ALLEN" MAK, :
JASMINE LAW, KIMBERLY LAW, LAY :
CHOO KOAY, and SIEW KHIM KOAY, :
:
:
                Defendants. :
-------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), seeking to represent a collective and a class of similarly situated employees. Plaintiffs have moved for conditional certification of a collective under § 216(b) of the FLSA. For the reasons that follow, the motion for preliminary certification of the collective action is granted in part.

## BACKGROUND

Plaintiffs allege that defendants own and operate four sushi restaurants at the following locations: 1714 Sheepshead Bay Road, Brooklyn, NY 11235 (the "Sheepshead Bay" location); 1221 Quentin Road, Brooklyn, NY 11229 (the "King's Highway" location); 2478 Coney Island Ave., Brooklyn, NY 11223 (the "Coney Island" location); and 177 Atlantic Ave., Brooklyn, NY 1120 (the "Atlantic Avenue" location). Each restaurant is a separate domestic business

corporation, organized under the laws of the State of New York. The only defendants to have appeared in this case are Mitoushi Sushi (the Sheepshead Bay restaurant), Hai Loon "Allen" Mak (its owner), and his wife, Jasmine Law (collectively the "non-defaulting defendants"). The remaining corporate and individual defendants have failed to appear, despite being properly served, and thus the Clerk of the Court has noted the default as to these defendants.

Plaintiffs are former servers from the Sheepshead Bay and King's Highway locations and seek conditional certification of their claims under a single collective, which would include servers who worked at the four restaurants within the three years prior from the date they actually file a consent to join the action. Plaintiffs allege that defendants violated the FLSA (and corresponding state laws) by, *inter alia*, failing to pay minimum wages and denying them overtime compensation.

Like most FLSA motions for a collective, this one depends primarily on averments in plaintiffs' affidavits describing how defendants operated the restaurants and treated other employees. In her affidavit, Rotari states the following:

- From January 2012 through May 2016, Rotari worked for the Mitoushi restaurant as a server at its Sheepshead Bay and King's Highway locations. Based on conversations with her managers, the entity known as Mitoushi had four restaurants throughout Brooklyn.

- As a server, she was paid $30.00 a day and her half-day rate was $15.00. She was then given a raise, increasing her full-day pay to $40.00 and her half-day pay to $20.00. She was told not to inform the rest of the staff when she received a raise.

- At the Sheepshead Bay location, Rotari spoke with several other employees (providing their full names in her affidavit) about their pay, and they told her they similarly received $30.00 per full-day shift and $15.00 per half-day shift. She also spoke with employees who did not receive overtime pay, despite working more than 40 hours a week.

- She also took photos of several attendance sheets, which included the servers' names and notations indicating whether each employee worked a full or half shift.

2

- The four locations shared employees. For example, a manager named Michelle worked at both the Sheepshead Bay and King's Highway location; Rotari regularly worked at both locations; and Rotari met colleagues who worked at the company's other locations.

- While working at the King's Highway location, she met Aida Karimova and Alexandra Miskin, servers who also worked at the Coney Island restaurant. Karimova and Miskin confirmed with Rotari that the pay practices and policies between the two locations were the same.

- Rotari also spoke with two managers, Rudi and Jin, who told her that the individual defendants – Jasmine Law, Allen Mak, Kimberly Law, Lay Koay, and Siew Koay – all had ownership percentages in all four Mitoushi locations.

Her affidavit corroborates the affidavit submitted by Luo, who similarly states that:

- He worked as a server at the Sheepshead Bay location from 2010 until January 2019 and was never provided a notice of his rate of pay. At all times, he was paid exclusively on a per shift basis, and the defendants did not provide him with updated written wage notices when his rate of pay changed.

- In the beginning of 2018, Luo spoke with a colleague named Joyce LNU, who worked at the Sheepshead Bay location with him. She told him that she had previously worked at the Atlantic Avenue location and that the two locations shared the same pay policies and practices. Specifically, Joyce told him that the Atlantic Avenue location did not pay overtime whenever employees worked more than 40 hours a week.

- He recalls speaking with another colleague, Amy LNU, who told him that her brother worked at the Coney Island location. According to Amy's brother, the Sheepshead Bay location and Coney Island locations shared the same practices and policies (i.e., no overtime pay).

- Seven colleagues, whom Luo names in his affidavit, told him that they also were paid exclusively on a per shift basis. Luo observed managers maintaining time sheets indicating whether a server worked a 12-hour or 6-hour shift.

- There was overlap of employees between the various restaurants. One manager, Michelle, worked at the Sheepshead Bay location on some days, and told him that she worked at the King's Highway location on other days.

- Luo regularly worked 12-hour shifts without any breaks, and the company implemented a policy where employees were instructed to only clock in 35-36 hours per workweek, regardless of how many hours they actually worked. This ensured no documentation existed to show that servers regularly worked over 40 hours per week.

3

**DISCUSSION**

Section 216(b) of the FLSA creates a private right of action for employees to recover unpaid minimum wage and overtime compensation on behalf of themselves and similarly situated employees. Similarly situated employees must opt into the collective action by filing their written consent with the court before they may proceed as plaintiffs. See 29 U.S.C. § 216(b). Thus, district courts have discretion to facilitate a notice process by which potential plaintiffs are informed of an FLSA action that they might join to adjudicate their rights. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989).

Consistent with this discretion to facilitate notice, courts in the Second Circuit conduct a two-step process to determine whether to certify a collective action under the FLSA. See Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. (internal quotation marks and citations omitted). This step requires plaintiffs to "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." Id. (internal quotation marks and citations omitted). "[T]he focus of the inquiry is not on whether there has been an actual violation of law but whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Romero v. La Revise Assocs., LLC., 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013) (internal quotations marks and citations omitted).

"At the second stage, the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." Myers, 624 F.3d at 555 (internal quotation

marks and citations omitted). "The action may be de-certified if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Id. (internal quotation marks and citations omitted).

Plaintiffs' instant motion concerns only the first step of this process. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014).

## I. Collective Action

### A. The King's Highway and Sheepshead Bay Locations

As to the King's Highway and Sheepshead Bay locations, the allegations set forth in the affidavit satisfy the "modest showing that the law requires." Alberto v. Rico Pollo #2 Restaurant Corp., No. 18-cv-4762, 2018 WL 6813057, at *3 (E.D.N.Y. Dec. 26, 2018). While working at both locations, Rotari alleges to have been paid on a per shift basis, and she provided the full names of multiple servers who told her that they also were paid in the same manner. Contrary to defendants' assertions, plaintiffs are permitted to rely on hearsay on a collective action motion, the dominant view in this Circuit. See, e.g., Gui Zhen Zhu v. Matsu Corp., No. 18-cv-203, 2020 WL 29835, at *6 (D. Conn. Jan. 2, 2020); Ramos v. Platt, No. 13-cv-8957, 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014); Moore v. Eagle Sanitation, 276 F.R.D. 54, 59 (E.D.N.Y. 2011); Zivali v. AT&T Mobility LLC, 646 F. Supp. 2d 658, 662 (S.D.N.Y. 2009). Plaintiffs also attached multiple business records (e.g., attendance sheets) with various servers' names to their motion, corroborating Rotari's affidavit that other servers were subjected to a similar compensation policy.

It is true that Rotari's personal knowledge is limited and the conversations she had with others occurred before May 2016. However, her affidavit substantially corroborates Luo's account. He also worked at the Sheepshead Bay location from 2010 to 2019 and states that the practices and policies Rotari witnessed from May 2016 continued until 2019. Defendants have submitted no evidence denying the allegations or showing that things have changed. Therefore, despite Rotari's somewhat dated information, plaintiffs have made a "modest showing" that the two locations shared common policies and procedures.

Defendants contend that the Court should give "no weight to the Rotari declaration" because her FLSA claims are time-barred under the three-year statute of limitations applicable to willful FLSA violations. See 29 U.S.C. § 225(a). Even assuming Rotari's claims are time-barred, her affidavit (as an affidavit of any witness) may be considered at the first stage of the collective action motion. See Rosario v. Valentine Ave. Disc. Store, Co., 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011). Given the substantial overlap of employees and managers and similar *modus operandi* between the King's Highway and Sheepshead Bay locations as both plaintiffs' affidavits describe, there is no reason to believe that the former suddenly changed its compensation policies after Rotari's departure in May 2016.

**B. The Coney Island and Atlantic Avenue Locations**

Plaintiffs aver that employees at two other restaurants also experienced the same policy of undercompensation and unpaid overtime. Defendants contend that I should not include these two locations in the collective action because plaintiffs lack personal knowledge as to these locations' practices. However, "[c]ourts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs have demonstrated that they were all subject to the same allegedly unlawful policy or plan."

Rosario v. Valentine Avenue Discount Store, Co., Inc., 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011); see also Karic v. Major Auto. Co., Inc., 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (holding common pay practices coupled with common ownership was sufficient to conditionally certify a class consisting of all the entities); Garcia v. Pancho Villa's of Huntington Vill., Inc., 678 F. Supp. 2d 89, 93-94 (E.D.N.Y. 2010) (finding that plaintiffs, who were all employed at one restaurant, were similarly situated to employees at two other restaurants when all three locations were owned by the same individuals, employees were shared among the three locations, and plaintiff knew a co-worker in one of the other locations who was not properly compensated).

Luo's affidavit contains a hearsay within hearsay statement from Amy LNU, who told Luo that her brother informed her that the Coney Island restaurant's practices were the same at the Sheepshead Bay's location. Although this double hearsay statement may be less probative, it is bolstered by Rotari's affidavit. Specifically, while working at the King's Highway location, Rotari met two servers, Karimova and Miskin, who also worked at the Coney Island location. Both told Rotari that they were never paid overtime despite working over 40 hours a week and were paid on a full or half-shift basis. There is thus sufficient detail in plaintiffs' affidavits to justify including servers from the Coney Island location in the conditional collective action.

As to the Atlantic Avenue location, Luo recalls speaking with another server named Joyce LNU, who told him in the beginning of 2018 that this location also did not pay its employees overtime and paid on a per shift basis. She specifically told him that the Sheepshead Bay and Atlantic Avenue locations shared the same policies and practices.

Plaintiffs have also shown enough to suggest that there was a common ownership among the four locations. Two managers told Rotari that all the individual defendants were co-owners, in varying degrees, of all four restaurants. Her account corroborates Luo's affidavit, in which he

7

states that Law and Mak owned percentages in all four Mitoushi locations because an unnamed manager told him. Based on Luo's affidavit, Rotari's specific corroboration, and the substantial overlap of employees, I agree that, for purposes of the first step of the collective motion analysis, there appears to have been a common ownership interest among the four locations.

Although hearsay, the statements of Karimova, Miskin, and Joyce suffice as a "modest showing" and thus the Court can reasonably infer that servers at all four locations were similarly situated. As in Garcia, both managers and servers were shared among the four restaurants, the locations were co-owned by the same individuals, and plaintiffs personally knew of co-workers from the Coney Island and Atlantic Avenue restaurants who were not properly compensated. This is sufficient at this preliminary stage.

In contrast, defendants' affidavits in opposition leave many questions unanswered. Defendants' affidavits do not deny, for example, that they paid their employees on a per shift basis or failed to pay overtime. One of the non-defaulting defendants, Law, claims that she has never held an ownership interest in any of the four restaurants. This cannot defeat plaintiffs' motion because at step one, I should credit plaintiffs' averments rather than resolve factual disputes between the parties (and plaintiffs claim to have heard from their managers that she held an ownership interest in the other locations).

Defendant Mak, unlike his wife, does not disavow ever holding an ownership interest in the other three restaurants. Nor does he rebut plaintiffs' contention that the restaurants regularly shared employees. In fact, his affidavit is cryptic. He merely states that "I do not own any of" the three other restaurants (leaving open the possibly that he did in the past) and that plaintiffs "have failed to present any factual evidence to show common ownership of all four locations."

Rather than affirmatively deny that there neither was nor is a common ownership interest among the various locations, Mak simply points out that plaintiffs have not shown enough. I disagree. He claims to have no responsibility for what happens at the other three locations, but Mak does not explain why many of his employees (e.g., Rotari, Michelle, Karimova, Miskin, and Alice) frequently worked at the other locations. His omissions are material. As I have noted before, "friends do not share employees; that's business." Alberto, 2018 WL 6813057, at *4. The cases defendants cite do not require a different result.[1]

## II. Equitable Tolling

The statute of limitations for potential plaintiffs' FLSA claims in this case is three years if the conduct was willful and two years if it was not. See 29 U.S.C. § 255(a).

Plaintiffs have asked the Court to equitably toll the statute of limitations until notice is sent to the members of the collective. In an FLSA collective action, "the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." Garriga v. Blonde Builders Inc., No. 17-cv-0497, 2018 WL 4861394, at *10 (E.D.N.Y. Sept. 28, 2018). The statute of limitations is not tolled upon the filing of the complaint, as it is in a class action, and opt-in plaintiffs' consent forms do not relate back to the filing of the complaint. As a result, "[i]f the limitations period is not [ ] tolled, opt-in plaintiffs would not be able to make claims for any period prior to three years from the date they

---

[1] In Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 356 (E.D.N.Y. 2008), the hearsay statements had been rebutted by the hearsay declarant, were made by an unknown individual, or contained generalized allegations about many stores. Here, plaintiffs identified the hearsay declarants by either their full or first names; the identified declarants had worked at one or more of the four locations; and each hearsay declarant specifically told plaintiffs the policies and practices among the four locations were identical.

Similary, in Lujan v. Cabana Mgmt., Inc., No. 10-cv-755, 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011), the plaintiffs failed to provide any information about common practices among two other locations in Florida and the three locations in New York, and the only suggestion of commonality among the five locations was a hearsay statement made to plaintiff by an unknown declarant. Here, the locations are all in Brooklyn, plaintiffs have provided information about common practices among the four locations, and the hearsay declarants are identified.

actually file a consent to join the action." Contrera v. Langer, 278 F. Supp. 3d 702, 722-23 (S.D.N.Y. 2017) (citing 29 U.S.C. § 256(b)).

However, "[f]ederal courts should grant equitable tolling sparingly, and only in rare and exceptional circumstances." Yahraes v. Rest. Assocs. Events Corp., No. 10-cv-0935, 2011 WL 844963, at *1 (E.D.N.Y. March 8, 2011) (*colatus*). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) 'has acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80–81 (2d Cir. 2003) (citation omitted).

Courts in this Circuit have denied requests for equitable tolling where plaintiffs rely only on defendants' failure to notify plaintiffs of their rights, "as it would provide for equitable tolling whenever a defendant violated FLSA and NYLL by failing to post notices or provide statements of hours and wages." Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d 274, 279 (E.D.N.Y. 2015); see also Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 480 (S.D.N.Y. 2008) ("To hold that 'a failure to disclose that an employee is entitled to overtime pay is sufficient to work an equitable toll would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime.'") (citation omitted). But other courts have found that the fact that "equitable tolling issues often arise in other FLSA actions is sufficient to send notice to the larger group." Knox v. John Varvatos Enterprises Inc., 282 F. Supp. 3d 644, 661 (S.D.N.Y. 2017) (internal quotation marks omitted) (collecting and rejecting cases that have allowed equitable tolling).

I disagree with those decisions that effectively eliminate the requirement of extraordinary or unique circumstances as a condition of equitable tolling in FLSA cases. The Second Circuit has made clear that equitable tolling is reserved for "rare" circumstances. To disregard that instruction here would create "a rule that simply assumes that equitable tolling will be routinely available in all FLSA cases." Id.

Although articulated in an entirely different legal context, the Supreme Court has instructed that equitable tolling is not a "cure-all for an entirely common state of affairs." Wallace v. Kato, 549 U.S. 384, 396 (2007). If Congress wanted to toll the statute of limitations for opt-in plaintiffs under the FLSA as a means of avoiding the very scenario that plaintiff argues warrants equitable tolling here, Congress would have included such a provision in the statute. It did not, and plaintiffs have not shown why their case is any different from a regular, run-of-the-mill FLSA collective action.

Plaintiffs' motion for equitable tolling of the statute of limitations is denied.

### III.   Discovery as to the defaulted defendants

Mak avers that he currently neither owns nor has any responsibilities over the other three restaurants. However, in his affidavit, he avoids definitively denying that there was ever any common ownership or management among the four locations during the relevant time period.

Mak's affidavit presents a practical problem in terms of giving notice to employees of all four locations. There is no reason to think that defendants who have chosen to default will suddenly respond to discovery requests. And we cannot count on Mak to identify employees of the other three locations as he continues to deny responsibility. His denials are insufficient to prevent collective certification at step one. However, since he does not admit common control, it

is not clear whether he has the same access to information for the other three locations as he has for Sheepshead Bay.  The Court will resolve this problem as follows.

The non-defaulting defendants shall produce, within 7 days of this order, any and all non-privileged documents and electronically stored information within their possession, custody, or control that refer to the other three locations and corporate entities. Within 10 days of this order, the corporate defendant for the Sheepshead Bay restaurant, "Mama Mito Inc." or "Mitoushi," shall identify and make available to plaintiffs a witness for deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) (which may be Mak or Law, if either is best qualified).  The witness shall be prepared to testify as to all the current and past principals of Mama Mito since its inception and whether its principals have or the corporate entity has ever held a property interest in the other three restaurants.  The witness should also be able to articulate the entity's relationship with the other three locations, including as to why its employees were regularly shared with the other locations.

This does not mean that I have determined plaintiffs' allegations of common management other than for purposes of the first step of the collective motion analysis.  But the non-defaulting defendants are on notice that whatever relationships exist or existed between them, if any, plaintiff is going to obtain complete disclosure about them, and quickly.

## IV. Expedited Disclosure of Names and Contact Information

Plaintiffs seek a computer-readable list of names, last known addresses, telephone numbers, e-mail addresses, social security numbers, dates of employment, titles, compensation rates, and hours worked per week for all employers employed at the four locations as servers between 2016 and the present date.  This is overly broad for the purposes of providing notice to

potential FLSA opt-in plaintiffs.  Rather, plaintiffs' motion is granted to the extent necessary to facilitate providing notice by first-class mail and e-mail to viable members of the collective.

Plaintiffs seek expedited disclosure of contact information for members of the collective, but they do not explain what they mean by "expedited."  The Court orders non-defaulting defendants, within 14 days of this order, to disclose the names, addresses, and e-mail addresses for all employees who worked as a server (or any other similar title) at the Sheepshead Bay location, and to the extent it is within their custody, possession, or control, similar contact information for servers from the other three locations.  The production of contact information need only cover servers employed by defendants within three years of this order.  See Lopes v. Heso, Inc., No. 16-cv-6796, 2017 WL 4863084, at *6 (E.D.N.Y. Oct. 27, 2017).

## V. Posting of the Notice

Plaintiffs request to post the notice, along with consent forms, in a conspicuous location at all four locations.  "Posting notice in the workplace maximize potential Plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in." Gui Qing Wang v. H.B. Restaurant Group, Inc., No. 14-cv-813, 2014 WL 5055813, at *6 (S.D.N.Y. Oct. 7. 2014).  Accordingly, "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."  Id. (citation omitted).  I adopt plaintiffs' proposed notice and it shall be posted at the Sheepshead Bay location, along with sufficient consent forms, in a conspicuous location within 7 days of this order.  The posting of the notice and consent forms at the remaining three locations will be stayed until the completion of the Rule 30(b)(6) deposition.

## VI. Reminder Notice

After a notice is sent, plaintiffs seek to send a reminder notice to potential opt-in plaintiffs before the deadline for opting in, to which defendants object. I will permit one reminder. "Significantly, the weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA." Meo v. Lane Bryant, Inc., No. 18-cv-6360, 2019 WL 5157024, at *13 (E.D.N.Y. Sept. 30, 2019); see also Diaz v. New York Paving Inc., 340 F. Supp. 3d 372, 387 (S.D.N.Y. 2019). The reminder notice may be mailed and e-mailed to potential opt-in plaintiffs 14 days before the opt-in deadline.

## CONCLUSION

Plaintiffs' [45] motion for conditional certification as a FLSA collective action, and for court-authorized notice, is granted in part, in accordance with the guidelines set forth above.

Within 7 days of this order, any and all documents and ESI within the non-defaulting defendants' possession, custody, or control which refer to the other three locations or corporate entities shall be produced to plaintiffs. Within 10 days of this order, the non-defaulting defendants shall make available for deposition a Rule 30(b)(6) witness. They are reminded that Rule 30(b)(6) requires that the witness be properly prepared for his deposition.

Within 7 days of this order, non-defaulting defendants shall post the notice, along with sufficient consent forms, in a conspicuous location at the Sheepshead Bay location.

Furthermore, the non-defaulting defendants are directed to disclose to plaintiffs, within 14 days of this order, the names, addresses, and e-mail addresses of its servers as set forth above. Plaintiffs who wish to participate in this FLSA collective action must opt in by May 30, 2020.

Upon completion of the deposition of the Rule 30(b)(6) witness, plaintiff shall request a status conference with the Court.

**SO ORDERED.**

                                                    _____
                                                               U.S.D.J.

Dated: Brooklyn, New York
        March 17, 2020